1  McGREGOR W. SCOTT
   United States Attorney
2  MARK J. McKEON
   Assistant United States Attorney
3  2500 Tulare Street, Suite 4401
   Fresno, CA 93721
4  Telephone: (559) 497-4000
   Facsimile: (559) 497-4099

**FILED**

JUL 05 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____

6  Attorneys for Plaintiff
   United States of America

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,              CASE NO. 1:15-CR-00179-LJO

11              Plaintiff,

12              v.                        VIOLATION: 18 U.S.C. § 1349 – Conspiracy to
                                          Commit Health Care Fraud; 18 U.S.C. §§ 1347, 2(a)
13 BAHAR GHARIB-DANESH, D.C., and         – Aiding and Abetting Health Care Fraud
14 PAIN FREE DIAGNOSTICS, INC.,
      a California Corporation,
15    dba Pain Free Management,

16              Defendants.

18              S U P E R S E D I N G   I N F O R M A T I O N

19

20 COUNT ONE: [18 U.S.C. § 1349 – Conspiracy to Commit Health Care Fraud]

21     The United States Attorney charges:

22              PAIN FREE DIAGNOSTICS, INC.,
                   a California Corporation,
23                 dba Pain Free Management,

24 defendant herein, as follows:

25 I.    INTRODUCTION

26    At all times relevant to this indictment:

27    1.    J.T. ("J.T.") was a clinical psychologist licensed to practice psychology by the California

28 Board of Psychology, with his principal place of business at 13900 Panay Way, #DS-35, Marina Del

SUPERSEDING INFORMATION                        1

Ray, California 90292 .

2.      Mindwaves Psychological Services, Inc. ("Mindwaves") was a California professional corporation located at 4712 Admiralty Way, Suite 476, Marina Del Rey, California 90292. Mindwaves was owned and controlled by defendant J.T..

3.      N.E. was a chiropractor licensed to practice by the California Board of Chiropractic Examiners, with her principal place of business at 2920 F Street, #C5, Bakersfield, California 93312.

4.      Pain Free Diagnostic was a California corporation doing business as Pain Free Management Company ("PAIN FREE MANAGEMENT"). PAIN FREE MANAGEMENT was located at 6944 Reseda Boulevard, Reseda, California 91335. PAIN FREE MANAGEMENT leased space at clinics to J.T. and provided J.T. with management and billing services.

A.      Workers Compensation Insurance

5.      In California, an employer pays for medical care for a work-related injury or illness, either through a workers' compensation insurance policy, by being self-insured or through the State Compensation Insurance Fund ("SCIF"). The SCIF was established in 1914, and is now the largest provider of workers' compensation coverage in California. SCIF is a division of the California Department of Industrial Relations ("DCIR") and is considered to be a California state agency. SCIF's mission is to provide an available market for workers' compensation insurance at fair rates, and to serve as a model for all workers' compensation carriers.

6.      Worker's compensation insurance was sold to employers to protect them from liability in the event of on-the-job injuries resulting in employee injury, disability or death and to provide monetary relief and medical benefits to injured workers. California workers' compensation law requires claims administrators to authorize and pay for medical care that is "reasonably required to cure or relieve" the effects of the injury. This means care that follows scientifically based medical treatment guidelines.

7.      Workers' compensation insurance policies are private plans and contracts, affecting commerce, under which medical benefits, items, and services are provided to an individual, and thus are "health care benefit plans" within the meaning of Title 18, United States Code, Section 24.

8.      The Medical Unit issues QME panels to injured workers and claims administrators. A QME panel is a randomly generated list of QME medical providers issued when there is a dispute about

1  whether an injury is work related, or if there is a medical issue that has not been resolved by the treating

2  physician's report.

3      9.      In some circumstances, a primary treating physician may write a medical-legal report.

4  However, no medical provider may write or bill for a medical-legal report unless there has been a

5  dispute with the defendant that would trigger a medical-legal examination. In such a cases, the medical-

6  provider writing the report must be selected from the randomly generated list of QME providers. A

7  primary treating physician may write and bill for a medical-legal report only in response to a properly

8  acquired medical-legal report after a dispute.

9      10.      Reports by treating or consulting physicians are subject to the Official Medical Fee

10  Schedule adopted pursuant to California Labor Code Section 5307.1. When a physician writes a

11  medical-legal evaluation report, the physician is reimbursed pursuant to the higher Medical-Legal

12  Expense fee schedule. ML 102 is the billing code used for basic comprehensive medical-legal

13  evaluations. ML 103 is the billing code used for complex comprehensive medical-legal evaluations

14  which include at least three complexity factors.

15      11.      In order to receive payment from the insurer, a physician is required to submit a health

16  insurance claim form to the insurer, called a Form CMS-1500. The claims may be submitted in hard

17  copy or electronically. A narrative report accompanies the medical bill, which becomes part of the

18  complete bill. The CMS-1500 identified the patient; the referring physician; the insurance company;

19  who, where and what services were provided to the patient; and the charges associated with those

20  services. The bills and reports are used by the insurance company to evaluate the proper reimbursement

21  to the medical providers.

22  II.      The Conspiracy

23      12.      Beginning at a time unknown to the grand jury, but no later than in or about August 2005

24  and continuing through in or about November 2012, in Kern, Tulare and Fresno Counties in the State

25  and Eastern District of California, and elsewhere, defendant PAIN FREE MANAGEMENT and others

26  known and unknown, did unlawfully conspire, confederate and agree with each other to devise a scheme

27  and artifice to execute, and attempt to execute, a scheme and artifice to defraud a health care benefit

28  program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is worker's

1  compensation insurance, and to obtain, by means of materially false and fraudulent pretenses,

2  representations, and promises, money and property owned by, and under the custody and control of

3  private insurers in connection with the delivery of and payment of health care benefits, items and

4  services, in violation of Title 18, United States Code, Section 1347.

5  III.   Purpose of the Conspiracy

6      13.   It was a purpose and object of the conspiracy for PAIN FREE MANAGEMENT and

7  other co-conspirators known and unknown, to unlawfully enrich itself by, among other things:  (a)

8  submitting false and fraudulent claims to worker's compensation insurance providers for services that

9  were medically unnecessary, that were not eligible for reimbursement, and that were never provided; (b)

10  concealing the submission of false and fraudulent claims to worker's compensation insurance providers,

11  the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the

12  personal use and benefit of the defendants and their co-conspirators in the form of compensation and

13  other remuneration.

14  IV.   Manner and Means of the Conspiracy

15      The manner and means by which the defendants and their co-conspirators sought to accomplish

16  the object and purpose of the conspiracy included, among others, the following:

17      14.   On or about September 1, 2009, PAIN FREE MANAGEMENT entered into a contract

18  with J.T. to lease space located at clinics and to operate J.T.'s clinical psychology practice to the extent

19  it was conducted on the premises, including maintenance of patient medical records, and billing and

20  collection of professional fees.  In return, J.T. agreed to pay PAIN FREE MANAGEMENT a

21  "management fee" equal to fifty percent (50%) of all money actually received and derived directly or

22  indirectly by reason of any medical or health care related services provided by J.T..

23      15.   J.T. would submit bills for services rendered to employees under his own name as well as

24  through his corporation, Mindwaves Psychological Services, Inc., to PAIN FREE MANAGEMENT,

25  which would then forward the bills to a third party billing agency for the purpose of both preparing

26  CMS-1500 forms and sending them to the appropriate insurers. J.T.'s authorized signature would then

27  be affixed to the CMS-1500 by the third party billing agency and the J.T. would sign the narrative

28  reports submitted with each CMS-1500.

16.    J.T. routinely submitted bills and reports that were the same for each and every patient, including the time spent in examination and testing, and for the exact same dollar amount, regardless of the age, sex, geographic location of the patient, or the type and seriousness of the patient's injury.  The narrative reports stated almost the same information word-for-word for every patient, other than identifying information such as the name, sex, and some details about how the patient was injured.

17.    J.T. routinely billed using the code ML 103 for medical-legal evaluations, identifying himself in the narrative report as a QME.  He would also state in his narrative report that he was requested to conduct a medical-legal evaluation by the patient or by the primary treating physician, EOH.  This allowed him to bill using the higher Medical-Legal Expense fee schedule.  These bills were all false and fraudulent because J.T. had not been appointed a QME to perform medical-legal evaluations for these patients nor was there a documented dispute between the employer and the injured worker.  In addition, J.T. submitted bills where he claimed he acted as a QME during a period of time when he had allowed his QME certification to lapse.

18.    When submitting bills to insurers, J.T. would claim to see up to a dozen patients per day. For each patient, J.T.'s bill would submit that he provided each patient with approximately 20.8 hours of psychological evaluations in a single day.  On one day, J.T. billed a total of 291.2 hours for treating fourteen patients.  In one period of two weeks, J.T. billed approximately 1,123.2 hours treating patients and writing reports.

19.    Between on or about August 2005 and on or about November 2012, J.T. submitted claims for psychological services in worker's compensation cases totaling in excess of $5.6 million.

All in violation of Title 18, United States Code, Section 1349.

COUNT TWO: [18 U.S.C. §§ 347, 2(a) – Aiding and Abetting Health Care Fraud]

The United States Attorney charges:

BAHAR GHARIB-DANESH, D.C.,

defendant herein, as follows:

20.    Paragraphs 1 through 13 of Count One of this Indictment, are re-alleged and incorporated by reference as if fully set forth herein.

21.    Defendant BAHAR GHARIB-DANESH D.C., ("GHARIB-DANESH") was a

chiropractor licensed to practice by the California Board of Chiropractic Examiners, with her principal place of business at 6944 Reseda Boulevard, Reseda, California 91335.

22. Defendant GHARIB-DANESH directed her medical staff in how to prepare bills to be submitted by N.E..

23. N.E. submitted claims totaling approximately $5,686.89 to private insurance companies and the SCIF for services rendered by her between February 2012 and January 2014 for writing medical-legal reports, fraudulently using billing codes ML 102 and ML 103. These claims were false and fraudulent because they concerned reports written by her under circumstances when her writing a medical-legal report and her billing for it were not authorized by California law.

24. On or about June 6, 2014, in Kern County, State and Eastern District of California, and elsewhere, defendant GHARIB-DANESH, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully aid and abet the execution, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is worker's compensation insurance, and obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of the SCIF, in connection with the delivery of and payment of health care benefits, items and services, to wit: GHARIB-DANESH aided and abetted N.E. submitting a bill to SCIF for beneficiary I.-M.C.-V. for services allegedly rendered on or about November 8, 2013, in the amount of $849.73, using billing code ML 102.

All in violation of Title 18, United States Code, Section 1347 and 2(a).

Dated: *July 5, 2018*

McGREGOR W. SCOTT
United States Attorney

By: _____
MARK J. McKEON
Assistant United States Attorney